UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS TRINKLEIN,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Case No. 21-cv-12096
Honorable Terrence G. Berg
Magistrate Judge Elizabeth A. Stafford

---

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 9, 10]

---

Plaintiff Thomas Trinklein appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion, ECF No. 10, be **GRANTED**;

- Trinklein's motion, ECF No. 9, be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.    Background

### A. Trinklein's Background and Disability Application

Born in May 1959, Trinklein was 58 years old when he applied for DIB in June 2018, with an alleged disability onset date of March 2, 2018. ECF No. 7, PageID.37, 53.  He had past relevant work as a "purchasing agent" and "shipping and receiving supervisor."  *Id.*, PageID.53.  Trinklein claimed disability from pinched nerve, herniated disc, arthritis in knees and neck, hypertension, high cholesterol, and headaches.  *Id.*, PageID.49-53, 115-116.

After Trinklein and a vocational expert (VE) testified in both an October 2019 hearing and an August 2020 supplemental telephonic hearing, the ALJ found Trinklein not disabled.  *Id.*, PageID.44-55, 61-83, 84-114.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.41-43.  Trinklein timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Trinklein was not disabled.  At the first step, she found that Trinklein had not engaged in substantial gainful activity since the alleged onset date of March 2, 2018. ECF No. 7, PageID.47.  At the second step, she found that Trinklein had the severe impairments of cervical radiculopathy, osteoarthritis in the left shoulder and bilateral knees, and obesity.  *Id*.  Next, the ALJ concluded that none of Trinklein's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  *Id.*, PageID.48.

Between the third and fourth steps, the ALJ found that Trinklein had the RFC to perform light work, except

> the claimant can only occasionally push, pull, and reach overhead with the bilateral upper extremities. He can only occasionally climb, balance, stoop, and crouch, but can never kneel or crawl. There can be no exposure to wetness or excessive vibration, and no work at unprotected heights.

*Id.*  At step four, the ALJ found that Trinklein cannot perform any past relevant work as a "purchasing agent" or a "shipping and receiving supervisor."  *Id.*, PageID.53.  At the final step, after considering Trinklein's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that Trinklein

4

could perform, including positions as purchasing agent, supervisor

production clerk, procurement clerk, and stock supervisor.  *Id.*, PageID.54.

## II.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and

conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*,

741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an
> existing administrative record and asks whether it contains
> sufficient evidence to support the agency's factual
> determinations.  And whatever the meaning of substantial in
> other contexts, the threshold for such evidentiary sufficiency is
> not high.  Substantial evidence, this Court has said, is more
> than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as
> adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks

omitted).  Only the evidence in the record below may be considered when

determining whether the ALJ's decision is supported by substantial

evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Trinklein argues that the ALJ erred by finding that he could perform

new jobs with "very little" vocational adjustment and by failing to include

limitations about visual acuity in the RFC.  ECF No. 9.  The Court disagrees and finds that the ALJ's decision is supported by substantial evidence.

**B.**

Trinklein was 58 years old on his alleged onset date but turned 60 years old by the hearing.  ECF No. 7, PageID.53.  The regulation requiring ALJ's to consider the claimant's transferrable skills distinguishes persons of advanced age who are under 60 years old from those who have attained age 60.  20 C.F.R. § 404.1568(d)(4).  The Commissioner appears to agree with Trinklein that the Court should apply the part of the regulation that applies to claimants who are age 60 and older.  ECF No. 10, PageID.648. For that age category, a claimant limited to no more than light work will be found to "have skills that are transferrable to skilled or semiskilled light work only if the light work is so similar" to the claimant's previous work that he "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  20 C.F.R. § 404.1568(d)(4).  The skills of the claimant's past work "must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation."  SSR 82-41, 1982 WL 31389, at *6.  For jobs skills with "universal applicability across industry lines, e.g., clerical,

6

professional, administrative, or managerial types of jobs," claimants usually can transfer skills to different industries with "very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC." *Id.*

Trinklein argues that the ALJ's finding that there were other jobs that he could perform with very little or no vocational adjustment is not supported by substantial evidence because he has minimal computer skills. ECF No. 9, PageID.628-629.  The Court disagrees and finds that the record supports the ALJ's careful analysis of the transferability issue.

In the October 2019 hearing, the VE testified that although Trinklein cannot perform past work, he had the transferable skills for light work of "customer service, supervising, record keeping, scheduling, training, data entry, report preparation, negotiating, working with the numbers, math, estimating, clerical, computer, inventory, [and] ordering."  ECF No. 7, PageID.110.  Considering a hypothetical individual with Trinklein's age, education, and RFC limitations, the VE opined that acquired skills from Trinklein's past work will transfer with "'little' vocational adjustment in terms of tools, processes, setting, or industry" to the jobs of supervisor central supply (light work, 500,000 jobs), purchasing agent (light work, 150,000 jobs), supervisor production clerk (sedentary work, 200,000 jobs), and

7

contract manager (sedentary work, 165,000 jobs).  *Id.*, PageID.110-112, 341.

A December 2019 written interrogatory requested "[m]ore specificity" about the degree of transferability of the light and sedentary positions, seeking "occupations 'so similar to [the claimant's past work] that he would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.'"  *Id.*, PageID.341.  While the VE wrote that purchasing agent and supervisor production clerk "meet this degree of similarity to the past work," the jobs of contract manager and supervisor central supply "require more than very little vocational adjustment in work setting and industry."  *Id.*  But the VE found that the jobs of procurement clerk (sedentary work), stock supervisor (light work), and procurement services manager (sedentary work) met the hypothetical RFC to which Trinklein's acquired skills would transfer and require "'very little, if any' vocational adjustment."  *Id.*, PageID.342.

At the August 2020 hearing, the ALJ narrowed the inquiry even more to focus on "jobs in machine building as it relates to the auto industry."  *Id.*, PageID.73-74.  The VE responded that there were jobs in the national economy for purchasing agent (at least 20,000 jobs) and supervisor production clerk (at least 30,000 jobs) for machine building in the auto

8

industry.  *Id.*, PageID.73-74, 341.  Within this narrow industry, the VE also testified that someone with Trinklein's RFC and acquired skills could perform the jobs of procurement clerk and stock supervisor, with at least 10,000 jobs for each in the national economy.  *Id.*, PageID.74-75.

Because the VE identified jobs that were compatible with Trinklein's RFC and that he could perform "with 'a minimal amount of job orientation,'" the ALJ concluded that Trinklein was "not disabled."  *Id.*, PageID.54-55, 110-112, 342.  The ALJ adequately addressed the issue of transferability of skills, and her decision was supported by substantial evidence.

Trinklein argues the ALJ failed to address the discrepancy between Trinklein's past work "away from computers" and the VE-identified jobs with "more than occasional" computer usage.  ECF No. 9, PageID.628-630. "Occasional" is defined as "occurring from very little up to one-third of the time."  SSR 83-10, 1983 WL 31251, at *5.  Trinklein asserts that his computer skills are limited and that he did not spend much time in front of a computer, although he did use Excel.  ECF No. 9, PageID.628-629.  And he states "that his use of a computer comprised *at most* 20 percent of the workday."  *Id.*, PageID.628 (emphasis in original) (citing ECF No. 7, PageID.92).

Trinklein's vocational rehabilitation evaluation from a rehabilitation counselor, Robert Ancell, Ph.D., stated that Trinklein's prior "job description documents skill sets where he spent the majority of his time away from a computer and dealt more with higher-level functionality."  ECF No. 7, PageID.589.  Dr. Ancell found that Trinklein "is unable to sit at a computer for more than a few minutes because of the symptoms with his glaucoma," that his "keyboarding skills are limited," and that "none of the job titles suggested are directly transferable."  *Id.*  At a hearing, the VE testified that all the jobs she identified "would require more than occasional use of a computer" or a keyboard.  *Id.*, PageID.79-80.  Thus, Trinklein argues, "a job spent primarily away from a computer" to one with "more than occasional" computer usage is not so similar that it requires very little vocational adjustment.  ECF No. 9, PageID.628-630.

But a summary of Trinklein's work—gathered from documents and phone conversations—reported that "[h]e logged all actions and activities on computers" and "[d]id a lot of computer work in the afternoon & other location at night."  ECF No. 7, PageID.127-128.  According to the summary, Trinklein "clearly states that he spent his entire day supervising others. He trained employees, did hire/fire, assigned work duties, resolved labor issues. He reviewed requisitions, conferred with vendors, prepared

10

purchase orders and bids."  ECF No. 7, PageID.128.  He also "coordinated

shipping and receiving making sure that items were packed and shipped

correctly. He was in charge of staffing and making sure people were doing

their jobs as required."  *Id.*  From the summary, it appears that he "logged"

all these actions and activities using a computer.  *Id.*, PageID.127-128.

Trinklein also testified that he used a computer and "did a lot of reporting

for financials for cost savings, for I wrote my own Excels" using the

Microsoft Excel spreadsheet software.  *Id.*, PageID.91-92.  But he did not

consider this his "major focus of business."  *Id.*, PageID.92.

Even if Trinklein spent no more than 20 percent of his time at a

computer in his past job, he cites no authority showing that a shift from

occasional to "more than occasional" computer usage renders a job so

dissimilar that it requires more than "very little, if any vocational

adjustment."  *See* § 404.1568(d)(4); SSR 82-41, 1982 WL 31389, at *6.

The rule about transferability addresses the skills required, whether the

"same or similar tools and machines are used," and whether the "same or

similar raw materials, products, processes, or services are involved."

§ 404.1568(d)(2).  The regulations do not address the amounts of time that

an individual must spend using these skills, tools and machines, and work

processes in assessing transferability.  *Id.*  "[A]ll of the subsets of

11

1568(d)(2) need not be met for skills to be transferable." *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 856 (6th Cir. 2010).  And under the regulation, "[a] complete similarity of all three factors is not necessary for transferability."  § 404.1568(d)(3).

Plus, SSR 82-41 supports the VE's findings and the ALJ's conclusion that Trinklein—with past relevant professional work—would need to make very little, if any, vocational adjustment: for jobs skills with "universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs," transferability of skills to different industries "can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC."  SSR 82-41, 1982 WL 31389, at *6.  Trinklein shows no support or relevant case law for his contention that using computers more than he did in his past work prevents transferability.[2]

The VE testified that there would be very little, if any, vocational adjustment in terms of tools, work processes, work setting, or industry for

---

[2] Although Trinklein cites *Nitcher v. Comm'r of Soc. Sec.*, No. 08-11850, 2009 WL 2843920, at *6 (E.D. Mich. Aug. 31, 2009), the facts are distinguishable from this case; the *Nitcher* court found that the ALJ applied the incorrect legal standard, the ALJ's error was not harmless, the court could not "say that the VE's…testimony satisfies the stringent requirement [of the correct legal standard]," and "the VE misunderstood the nature of Plaintiff [sic] former position."  *Nitcher*, 2009 WL 2843920, at *5-6.

the identified "jobs in machine building as it relates to the auto industry,"

and the ALJ complied with the applicable regulations. ECF No. 7,

PageID.73-74, 341. Thus, substantial evidence supports the ALJ's finding

that Trinklein's past skills can be transferred to the jobs that the VE testified

that Trinklein could perform.

### C.

Trinklein also argues that the ALJ failed to include limitations about

visual acuity in the RFC. ECF No. 9, PageID.631. The regulations define

the RFC as "the most you can still do despite your limitations." 20 C.F.R. §

416.945(a)(1). When crafting an RFC, an ALJ need only include those

limitations he finds credible. *See Irvin v. Soc. Sec. Admin.*, 573 F. App'x

498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*,

987 F.2d 1230, 1235 (6th Cir. 1993)).

Here, the ALJ found that glaucoma was a non-severe impairment for

Trinklein. ECF No. 7, PageID.47. To make that conclusion, the ALJ

detailed Trinklein's medical history for glaucoma, citing June 2020 medical

records from Susan Perdue, O.D. *Id.*, PageID.594-609. Trinklein's records

show that he complained of "difficulty reading small print with his glasses"

and that "his eyes are painful if he misses his [eye] drops." *Id.*, PageID.47,

602. But the records also show that Trinklein "admits non-compliance" with

13

the medication and that "[h]e does not take the drop every day." *Id.*, PageID.602.  And Trinklein "did not return for follow up glaucoma care as recommended at last visit." *Id.*  Dr. Perdue stated that while Trinklein has glaucoma and blurred vision in "both" eyes, the severity is "mild." *Id.*, PageID.47, 602-603.  He was prescribed glasses for vision correction for computer, reading, and distance. *Id.*, PageID.47, 605.

The ALJ also observed that Trinklein had corrected vision of 20/50 near vision and 20/20 distance vision in both eyes. *Id.*, PageID.47, 606.  In the eye care plan for Trinklein's visit, Dr. Perdue noted that Trinklein should "continue use" of eye drops as treatment, "[laser peripheral iridotomy] as indicated," and that he should get a "referral to glaucoma specialist for evaluation" and treatment. *Id.*, PageID.608.  Based on this evidence, the ALJ found that "the condition does not appear to significantly limit the ability of the claimant to perform basic work functions, and is non-severe." *Id.*, PageID.47.  The ALJ then discussed Dr. Ancell's opinion that Trinklein's eye and hand limitations and problems with focus on concentration were work preclusive, finding that those portions of the doctor's opinion were moot because the "[RFC] determination does not adopt these limitations." *Id.*, PageID.53.

Trinklein asserts that the ALJ disregarded his poor vision in his right eye, which was 20/100 near vision.  ECF No. 9, PageID.633 (citing ECF No. 7, PageID.606).  But as the ALJ stated, Trinklein's *corrected* vision of both eyes with glasses was 20/50 near vision and 20/20 distance vision. *Id*., PageID.47, 606.  Trinklein also argues that the ALJ neglected to mention that glaucoma caused "brain freeze headaches."  ECF No. 9, PageID.632.  But Trinklein testified that he had these "miserable headaches 'till they got me on that stuff"—referencing the liquid eye drops for glaucoma that he admits to "not tak[ing]…every day."  ECF No. 7, PageID.103, 602-603.

The ALJ properly found that Trinklein's non-compliance with the eye drop treatment undermined his claim of disability.  ECF No. 7, PageID.47; *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("Impairments that are controllable or amenable to treatment cannot support a finding of disability.").  The Court finds no error.

## III.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion, ECF No. 10, be **GRANTED**; that Trinklein's motion, ECF No. 9, be **DENIED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 11, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in

length and complexity to the objections**, but there is otherwise no page

16

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First-Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on July 11, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
