UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **THOMAS TRINKLEIN**, <br><br> Plaintiff, <br><br> vs. <br><br> **COMMISSIONER OF SOCIAL SECURITY**, <br><br> Defendant. | 2:21-CV-12096-TGB-EAS <br><br> **ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION (ECF NO. 12)** |

This matter is before the Court on Magistrate Judge Elizabeth A. Stafford's Report and Recommendation of July 11, 2022 (ECF No. 12), recommending that Plaintiff's motion for summary judgment be denied (ECF No. 9), that Defendant's motion for summary judgment be granted (ECF No. 10), and that the findings of the Commissioner be affirmed. Plaintiff filed timely objections to the Report and Recommendation (ECF No. 13), and the Commissioner filed a response (ECF. No. 14).

The Court has reviewed Magistrate Judge Stafford's Report and Recommendation, and Plaintiff's objections thereto. For the reasons set forth below, Plaintiff's objections are **SUSTAINED IN PART** and **OVERRULED IN PART**. Accordingly, the Report and Recommendation is **ACCEPTED IN PART** and **REJECTED IN PART**, and this case is

remanded to the Commissioner under 42 U.S.C. 405(g) for further proceedings consistent with this order.

## I.   BACKGROUND

Mr. Trinklein applied for disability benefits in June 2018, asserting he became disabled on March 2, 2018 from a pinched nerve, herniated disc, arthritis in his knees and neck, hypertension, high cholesterol, and associated symptoms. ECF No. 12, PageID.672. He had previously worked as a purchasing manager, shipping/receiving manager, and safety director for an automotive industry machinery supply company. Tr. 10/31/2019 at 5-6, ECF No. 7, PageID.88-89.

After Mr. Trinklein's application was initially denied, he properly applied for review. He and a vocational expert both testified at a hearing in front of an Administrative Law Judge ("ALJ") on October 31, 2019. ECF No. 7, PageID.84-114. The parties participated in a supplemental hearing on August 20, 2020, during which the ALJ heard additional testimony from the vocational expert in response to an expert report submitted by Mr. Trinklein and from Mr. Trinklein about his continuing treatment. *Id.* at PageID.61-83.

The ALJ eventually issued a decision denying benefits on September 25, 2020. *Id.* at PageID.41-60. Mr. Trinklein timely appealed the decision to the Appeals Council, which declined to review the ALJ's decision. ECF No. 7, PageID.30-35. After that, Mr. Trinklein appropriately appealed his determination to this Court. Judge Stafford

2

issued a Report and Recommendation affirming the Commissioner's decision. ECF No. 12. Mr. Trinklein timely filed two Objections, which the Court is now prepared to review. ECF No. 13.

## II.  STANDARD OF REVIEW

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite the specific portion of the report and recommendation to which they pertain.

This Court must conduct a de novo review (as if it were considering the issues for the first time) of the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

For any parts of the report and recommendation reviewed de novo, the Court's judicial review is nevertheless circumscribed: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."[1] *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.

---

[1] The ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

2005). Substantial evidence is not a high standard, requiring "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### III.  ANALYSIS
#### A.  Objection One

Mr. Trinklein's first objection is that Judge Stafford improperly affirmed the ALJ's analysis at Step Five of the Social Security disability analysis. Specifically, he finds fault with the assessment of the transferability of his work skills from his previous jobs to any other work that he might be able to perform, stating that his testimony regarding "limited computer skills" was disregarded in finding that he could transfer to other jobs "involving much more substantial use of a computer during the day." ECF No. 13, PageID.689-692.

The parties do not contest that Mr. Trinklein is limited to light work and that his transferrable skills should be evaluated under the framework for individuals above the age of 60, which was his age at the time of the hearing. ECF No. 12, PageID.676. For individuals at that age limited to light work, the Social Security Administration has indicated:

> we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

20 C.F.R. § 404.1568(4). Guidance from the agency further explains that in determining transferability of skills in this age group,

4

> the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.

Social Security Ruling 82-41. The Ruling goes on to contrast skills that are unlikely to be transferable with only minimal orientation ("where job skills are unique to a specific work process in a particular industry or work setting, e.g., carpenter in the construction industry, skills will not be found to be transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry") versus those that are likely to be transferable even for this age group ("job skills [with] universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs"). *Id.*

The ALJ found (and Judge Stafford affirmed) that given his past relevant work, Mr. Trinklein had the following skills: "scheduling, customer service, report preparation, negotiating, training, record keeping, data entry, working with numbers, math, estimating, clerical, computer, inventory, and ordering." ECF No. 7, PageID.54. She further found that, based on the vocational expert's testimony, there were at least four jobs that exist in significant numbers in the national economy that were compatible with Mr. Trinklein's medical limitations and that he could perform with "little or no vocational adjustment" and with "a minimal amount of job orientation," as required by the relevant Social

5

Security guidance. *Id.* On this basis, she found that Mr. Trinklein was not disabled at Step Five of the disability analysis.

The Court finds that the ALJ's decision on this issue is supported by "substantial evidence" such that it must be affirmed. The ALJ specifically asked the vocational expert to identify jobs that Mr. Trinklein could transfer his skills to and that would require "little to no vocational adjustment in tools, processes, setting, or industry." ECF No. 7, PageID.111. There is no reason to believe that the vocational expert and the ALJ were not considering computer usage in evaluating this hypothetical. The ALJ went one step further and issued a written interrogatory to the vocational expert on November 13, 2019:

> More specificity is requested relative to the degree of transferability. Are the above light and sedentary occupations "so similar to [the claimant's past work] that he would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry"?

ECF No. 7, PageID.336. At the supplemental hearing on August 20, 2020, the ALJ asked several follow-up questions of the vocational expert about transferability of skills. ECF No. 7, PageID.71-76. This questioning, in combination with the vocational expert's responses, further supports the conclusion that the ALJ's assessment of whether Mr. Trinklein's skills could be transferred to other jobs was based on substantial evidence.

The ALJ acknowledged the testimony of Plaintiff's expert, Dr. Robert Ancell, regarding Plaintiff's potential limitations and the

6

difficulty that he would have transferring to jobs that required greater computer usage. ECF No. 7, PageID.52-53. But she found that opinion "unpersuasive" and "not consistent with the medical evidence or rules of Social Security." *Id*. The ALJ is authorized to make this type of assessment of provided evidence, and Mr. Trinklein has not raised any allegation of legal error in doing so.

Mr. Trinklein primarily argues that the amount of computer work required of any of the proposed available jobs should have been more closely scrutinized by the ALJ, because computers are key to the "tools" and "work processes" of many jobs. But the ALJ heard testimony from Mr. Trinklein about his use of computers at his previous job. ECF No. 7, PageID.91 ("wrote my own Excels"); PageID.127 ("did a lot of computer work in the afternoon," "logged all actions and activities on computers"); there is no evidence that she did not consider it. And he does not cite any authority for the proposition that an ALJ must give "special consideration" to computer usage over any other component of work processes, such as data entry, math, or negotiating, or that somehow a failure to specifically discuss the computer usage demands between an individual's past work and potentially available work in the national economy is legal error. His prior work skills and functions are similar to those with "universal applicability" described in SSR 82-41 and therefore are more likely to be transferable with minimal adjustment. Objection One is therefore overruled.

7

## B. Objection Two

Mr. Trinklein's second objection is that the R&R erred in finding no fault with the ALJ's determinations that his visual impairments were nonsevere and did not need to be incorporated into his residual functional capacity ("RFC").

An individual's RFC is "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). In assessing an RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Dyson v. Comm'r of Soc. Sec*, 786 Fed. App'x 586, 588 (6th Cir. 2019) (quoting SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). An ALJ need not specifically discuss nonsevere impairments in the assessment, however, so long as the analysis otherwise makes clear that she has followed the relevant guidance in considering them. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020).

The ALJ has significant discretion in determining how to weigh the evidence. 42 U.S.C. § 405(g); *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. App'x 852, 859 (6th Cir. 2011). Nevertheless, the ALJ's treatment of Mr. Trinklein's testimony and the doctor's report adduced to the record at the supplemental hearing appears inadequate. *See* Ex. 16F, ECF No. 7, PageID.594. In her decision, the ALJ summarizes the evidence regarding Mr. Trinklein's eye-related impairments and her conclusion that they are nonsevere as follows:

> As for glaucoma, the claimant was seen on June 2, 2020 (16F9). The report indicates that the claimant complained of difficulty reading small print with his glasses, and, when he misses his medication, he has eye pain (Id). He also reported that he was not compliant with his medication, as he did not utilize the eye drops each day (Id). The severity of the condition was noted as mild by the doctor (Id). The correction noted for computer, reading, and distance vision were glasses (16F12). When corrected, the claimant had 20/50 near vision and 20/20 distance vision with both eyes (16F13). The only recommended treatment was continued use of the eye drops (16F15). Based on this, the condition does not appear to significantly limit the ability of the claimant to perform basic work functions, and is non-severe. When the claimant uses his medication and glasses, this condition is successfully treated.

ECF No. 7, PageID.47.

There are at least two problems with this analysis.[2] The first is the ALJ's conclusion that when Mr. Trinklein "uses his medication and glasses, this condition is successfully treated." Mr. Trinklein testified at two hearings about treatments for and limitations from his eye condition: at the first, he explained that his doctor prescribed "droplets" because he suffered from glaucoma, which caused his "eyeballs [to] overpressure" and made him experience what felt like "brain freeze" (ECF. No. 7, PageID.103-04); at the second, he testified that he continued to

---

[2] Mr. Trinklein also quibbles with the ALJ's decision to focus on his correction in *both* eyes with glasses being "20/50 near vision and 20/20 distance vision" while not mentioning that his right eye corrected vision is only 20/100. But this is not a mistake so much as it is a decision to emphasize particular evidence in the record; this alone is not a reason to sustain the Objection.

9

experience a "brain freeze headache with the eyes" when he "tried to do … things at home on the computer" despite treatment (ECF No. 7, PageID.69). According to Mr. Trinklein's testimony from that second hearing, his doctor had told him that "the[] drops aren't working" and that he needed to "get [his] eyes lasered to get that pressure off." *Id.*

The ALJ was not required to accept Mr. Trinklein's testimony concerning limitations from and treatment for his eye condition, but she discounted it without addressing the medical evidence supporting it. Treatment notes from June 2020, for example, reflect that Mr. Trinklein was experiencing "blurred vision" and "severe sensitivity to lights" in addition to the ocular pain for which the eye drops were prescribed. ECF No. 7, PageID.603. Those notes reflect that Mr. Trinklein would also need an "LPI" (laser peripheral iridotomy) to decrease his "risk for angle closure glaucoma" and include a referral to a specialist "for evaluation and tx [treatment]." ECF No. 7, PageID.608.

The second problem is the ALJ's conclusion that "the only recommended treatment [for the eye condition] was continued use of the eye drops." As noted above, treatment notes reflect that Mr. Trinklein needs laser treatment and a referral to a specialist to treat new and ongoing symptoms. These notes suggest a progression of his disease; previous notes reflect doctors wanted only to "monitor" it. *Id.* (from 2019, "monitor. no indication for tx at this time."); *id.* at PageID.466 (from 2018, "Monitor … Educated patient on options for a consult with JMO for laser

10

or possibility of starting drops … Pt wishes to start drops.") In the ALJ's decision there is no indication one way or another whether she considered this information.

Given these exclusions, and the possibility that the ALJ did not properly consider the severity of and any work-related limitations from Mr. Trinklein's eye condition, the Court cannot find that ALJ's decision is supported by substantial evidence. *See, e.g., Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240–41 (6th Cir. 2002) (ALJ's decision not supported by substantial evidence when "selective inclusion" of information from the record "does not accurately describe" claimant's condition in RFC). These defects are especially problematic in light of the vocational expert's testimony that the jobs she identified would require more than occasional computer usage. Mr. Trinklein's Objection Two is therefore sustained.

## CONCLUSION

For all of the above reasons, Plaintiff's Objections to Magistrate Judge Stafford's Report and Recommendation (ECF No. 13) are **SUSTAINED IN PART AND OVERRULED IN PART**. Accordingly, the Court **ACCEPTS IN PART AND REJECTS IN PART** the Report and Recommendation (ECF No. 12). Judgment shall enter in favor of Plaintiff against the Commissioner, **REVERSING** the Commissioner's decision that Plaintiff is not disabled and **REMANDING** this case to the Commissioner under 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 15th day of September, 2021.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge